The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BARRY HORN,<br><br>　　　　　　　　　Defendant. | NO. 2:19-cr-00035-RAJ<br><br>ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Barry Horn's motion for compassionate release. Dkt. 296. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

**I. BACKGROUND**

Mr. Horn is serving his current sentence after pleading guilty to one count of Conspiracy to Distribute Fentanyl and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime. In his plea agreement Mr. Horn admitted that from early 2017 through early 2019 he was involved in a conspiracy with several others to distribute counterfeit oxycodone pills containing fentanyl. As part of the conspiracy Mr. Horn distributed approximately 4,000 of these pills. When law enforcement agents searched Mr. Horn's residence they recovered approximately 120 counterfeit oxycodone pills containing fentanyl, $1,441 in currency, and a loaded pistol. Law enforcement agents recovered an additional loaded pistol in a jacket belonging to Mr. Horn. In the

residence agents also found a gun safe that contained three semiautomatic pistols, three assault rifles, one shotgun, one semiautomatic rifle, and hundreds of rounds of ammunition. Dkt. 90.

On January 24, 2020, this Court sentenced Mr. Horn to 30 months in custody, to be followed by five years of supervised release. Dkt. 240.

Mr. Horn is currently serving his sentence at Federal Correctional Institution Lompoc and has a projected release date of April 18, 2022.

On August 10, 2020, Mr. Horn filed a motion for compassionate release requesting the Court reduce his 30-month sentence to time served, suggesting that if the Court wished to impose a substitute punishment, the Court should order a reasonable period of home confinement as a condition of his five-year term of supervised release. Mr. Horn moves for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), arguing he presents "extraordinary and compelling reasons" for release based on his contention the Bureau of Prisons (BOP) at FCI Lompoc has inadequately responded to the coronavirus-19 (COVID-19) pandemic, and that he is at heightened risk of suffering further complications should he become re-infected with COVID-19 due to his underlying medical conditions, including obesity, asthma, hypertension, and the continuing health issues he is experiencing from having already contracted the virus. Dkt. 296.

## II. DISCUSSION

### A. Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction."

United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Horn's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Horn's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

ORDER - 3

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.  Exhaustion of Administrative Remedies

It is undisputed that Mr. Horn has met the exhaustion requirement and that his request to this Court is timely.  Dkt. 296, Ex. 2 and 5, Dkt. 305.  As the statutorily required 30-day period has expired, Mr. Horn's motion is properly before the Court.

### C.  Extraordinary and Compelling Circumstances

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Horn's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994.  That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Horn argues he has met his burden of showing extraordinary and compelling circumstances exist for the Court to grant his motion for compassionate release. He contends his health records provide evidence that his underlying health conditions of obesity, asthma, and hypertension may hinder his recovery from COVID-19 and place him at greater risk of further complications should he re-contract the virus. He indicates he is experiencing the effects of having contracted the virus, including difficulty breathing, tightness in his chest, headaches, lethargy, and sleepiness. Dkt. 296.

Mr. Horn is a 33-year-old man with a body mass index (BMI) of over 30. According to his declaration, he is 5 feet 11 inches tall and currently weighs 235 pounds, placing his BMI at 32.8. Dkt. 296, Ex. 2. A BMI above 30 is characterized as obese, and

is recognized by the Centers for Disease Control and Prevention (CDC) as a high risk factor for complications or death from COVID-19. Mr. Horn highlights that the Department of Justice concedes that a BMI above 30 qualifies as an "extraordinary and compelling" circumstance when combined with circumstances of the COVID-19 pandemic. Dkt. 296, Ex. 1. In addition, Mr. Horn has been informed he is pre-diabetic, Dkt. 296, Ex. 2, and his medical records indicate a hemoglobin A1C level of 5.7, which puts him at increased risk for diabetes. Dkt. 298 at 15.

Mr. Horn indicates he has been treated for asthma since childhood and uses an inhaler. He indicates his asthma continues to be a complicating factor in his recovery from COVID-19. After he was diagnosed with the virus, he was prescribed a steroidal inhaler, in addition to the albuterol inhaler he had been using, to help reduce his continuing difficulties with breathing and the tightness in his chest. Dkt. 296, Ex. 2, Dkt. 298.

Mr. Horn also contends he suffers from hypertension and receives medication to treat this condition. Dkt. 296.

While Mr. Horn concedes that at the time of preparation of his Presentence Report in January of 2020 he indicated he believed himself to be "in good physical health," he argues his current medical records provide evidence that his health has deteriorated and he now presents with increasing hypertension and indications of prediabetes, together with symptoms relating to the aftereffects of having contracted the virus. Dkt. 298.

Lastly, Mr. Horn argues the conditions at FCI Lompoc preclude him from abiding by the guidelines of the Centers for Disease Control and Prevention (CDC) relating to social distancing and sanitation, putting him at risk of re-infection and further health complications. Dkt. 296.

The government opposes Mr. Horn's request for immediate release and conversion of a portion of his sentence to home confinement. The government disputes Mr. Horn's statements set forth in his declaration regarding his weight (Dkt. 296, Ex. 2), relying on the evidence in the medical records which shows his weight as of May 27, 2020 at 220

pounds, placing his BMI at 30.7. Dkt. 307. While conceding his BMI of slightly over 30 is a factor recognized by the CDC as placing him at high risk for serious illness should he contract COVID-19, and that such a risk factor is generally an extraordinary and compelling reason that provides the Court with a basis for a reduction in sentence, the government argues that the fact Mr. Horn has already had COVID-19 and has since recovered argues against the Court granting his motion for release. Dkt. 305.

The government indicates that Mr. Horn suffers from asthma, which is treated with an inhaler. Dkt. 305. With respect to his claim regarding prediabetes, the government indicates that his hemoglobin A1C result indicates he is at the low end of the range that would place him at increased risk for diabetes. Dkt. 307.

The government points out that Mr. Horn denied suffering from hypertension at the time he self-reported to the institution, and that some but not all of his blood pressure readings have been elevated. The order for his prescription for Clonidine upon his self-surrender indicates it was prescribed in connection with his withdrawal from opioid use and was not refilled or further prescribed. The government indicates Mr. Horn's claim in his declaration that he has recently been prescribed a new medication for hypertension is not evident in the medical records.

In sum, the government argues that Mr. Horn's purported medical conditions do not constitute an extraordinary and compelling reason for the Court to release him.

The government contends that whether Mr. Horn could re-contract the virus is speculation and remains unknown based on the current science, and indicates that Mr. Horn's claims as set forth in his declaration, Dkt. 296, Ex. 2, are not substantiated by the medical records provided to the Court. Dkt. 315.

Finally, the government sets forth the efforts made by the BOP at FCI Lompoc to control the virus and provide medical treatment for those who contract it through the declaration of Lawrence Cross, the Health Services Administrator for the facility. Dkt. 315, Ex. B.

1    Before the Court analyzes Mr. Horn's health related concerns, the issue of the
2    conditions of his place of incarceration must be addressed.  In reviewing Mr. Horn's
3    request, the Court notes that it has traditionally considered the current conditions at the
4    housing facility according to the BOP website.  If Mr. Horn serves the balance of his
5    custodial time at Lompoc, the current (October 14, 2020) conditions at that facility
6    indicate:

| | |
|---|---|
| Inmates Positive: | 0 |
| Staff Positive: | 3 |
| Inmate Deaths: | 2 |
| Staff Deaths: | 0 |
| Inmates Recovered: | 736 |
| Staff Recovered | 16 |

This Court deferred ruling on this motion in order to secure current information, namely, the report of the neutral inspector charged with the duties of inspecting and making recommendations about the Lompoc facility.  Dkt. 313.  That report prepared by Dr. Homer Venter is now a matter of record.  While the report does not reflect glowing conditions at Lompoc and notes the need for substantial changes, it also demonstrates progress made by the institution since the outbreak of COVID-19.  Dr. Venter's report and findings are divided into three areas:  strengths, deficiencies and recommendations.

The strengths of the Lompoc facility response to the virus include increased staff screening, the creation of a dedicated unit to care for COVID-19 patients, creation of a screening database, the expansion of testing, quarterly quality meetings,  and the abundance of cleaning solutions for personal spaces.  Dkt. 317, Ex. A, at 24-25.

While the positive attributes of the changes at Lompoc have been noted, Dr. Venter points out a litany of troubling circumstances that can increase the risk of serious illness or death from COVID-19.  Yet, this report does not focus on those who have recovered from the virus.  As the Doctor notes:

> "A separate access to care issue is the lack of assessment for ongoing COVID-19 symptoms among people who have survived the infection. I spoke with many people who reported ongoing shortness of breath, pain, headaches, weakness and ringing in the ears weeks after their initial infection. The presence of these ongoing symptoms and even disability among a group of people who are classified by BOP as "recovered" reveals a lack of any system to look for these problems after a person leaves medical isolation. BOP has an obligation to assess COVID-19 patients and care for those who require physical therapy, specialty referral and other types of care during recovery."

Dkt. 317, Ex. A., at 29-30.

With these observations, Mr. Horn should be the beneficiary of the recommendations and follow-up by Lompoc. Dr. Venter's report, coupled with Mr. Horn's health conditions, do not warrant a finding of extraordinary and compelling reasons for a reduction in his sentence.

Turning now to Mr. Horn's specific conditions. It is undisputed that Mr. Horn's BMI is above the threshold for having a medical condition that the CDC has identified as a COVID-19 risk factor and generally qualifies as an extraordinary and compelling reason for the Court to consider a reduction in his sentence. The Court agrees with the government that the key difference with Mr. Horn's circumstance is that he has recovered from the virus. While he may speculate on the likelihood of a return bout of the disease, the medical science on this observation has yet to produce affirmative and persuasive evidence one way or the other and certainly not enough to warrant granting the relief he seeks. Moreover, there is evidence in the record of the fluctuation in Mr. Horn's weight when comparing his medical records to his declaration.

The Court also agrees with the government regarding the host of medical conditions expressed by Mr. Horn. None of the conditions, except for diabetes, are listed as factors that are known to increase an individual's risk of serious illness from COVID-19. At best, they are only listed as "likely" risk factors. Again, this is insufficient to warrant the relief requested.

Regarding Mr. Horn's diabetes, the medical records do show that when he was tested for the condition, the results indicated that he was at the low end of the standard that places an individual at increased risk for diabetes This limited showing does not warrant the Court granting a reduction in his sentence for an extraordinary and compelling reason.

**D. Safety of Others**

The Court next turns to whether Mr. Horn presents a danger to the safety of any other person or to the community. *See* U.S.S.G. §1B1.13(2). In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. 18 U.S.C. §3142(g).

Mr. Horn asserts he would not pose a danger to the community if released immediately. He indicates that he was successful on his year-long period of pretrial release, he has a stable release plan, has no criminal history other than his current conviction at issue, and he has no disciplinary record during his incarceration. He has participated in the RDAP treatment program while in custody and plans to continue with his suboxone therapy to treat his opioid addiction. Dkt. 296.

The government contends that the danger Mr. Horn poses to others and to the community far outweighs the reasons he presents for compassionate release. The government argues Mr. Horn's record on pretrial release is not an indicator of whether he remains a danger, and asks the Court to consider the underlying facts of his conviction, that he was involved for over a year in a conspiracy to distribute large quantities of a highly addictive and deadly drug, and that he possessed firearms to protect this drug enterprise. Dkt. 305.

The Court applauds Mr. Horn's effort at rehabilitation as indicated by his pretrial release performance, RDAP participation, and the absence of criminal history before the

current offense. While these are factors, this Court may not reduce a defendant's sentence unless it finds that he is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § (g); U.S.S.G. § 1B1.13. For this assessment the Court must consider Mr. Horn's conduct that led to him to plead guilty. Mr. Horn was involved in the distribution of a large amount of a highly addictive and dangerous drug. To protect his drugs, he maintained a loaded firearm in close proximity to the drugs, an additional loaded pistol in a jacket, a gun safe containing more pistols, assault rifles, a shotgun, another semi-automatic rifle, and hundreds of rounds of ammunition. Mr. Horn's engagement in a serious and dangerous drug trafficking scheme and firearms raises significant concerns and cause this Court to conclude that early release is not appropriate in the interest of safety to the community.

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Horn's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must consider relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a). These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner. 18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A). The Court has considered each of these factors and concludes that compassionate release is not warranted.

Mr. Horn posits that when this Court imposed its 30-month sentence, the Court didn't contemplate the present conditions of his confinement given the COVID-19 epidemic and argues that the § 3553(a) factors weigh in favor of release. He acknowledges that while he has served only a short amount of time, his five months in custody has been far harsher than if he had served his sentence under normal circumstances. Mr. Horn contends that five months in custody is more than sufficient

punishment for his crime and that the profound change of circumstances warrants reconsideration of the sentence this Court imposed. Dkt. 296.

In response, the government argues the Court weighed the § 3553(a) factors at the time it imposed Mr. Horn's 30-month sentence, pointing out it was a sentence which was half that recommended by the government and half what was available to the Court under the Sentencing Guidelines. The government reminds the Court of the sentence imposed on Mr. Horn's co-defendant and leader of the conspiracy, Rhett Irons, who receive a 15-year custodial term, and argues that releasing Mr. Horn just five months into his 30-month sentence would contravene the goals set forth in § 3553(a). Dkt. 305. The Court agrees.

### F. Consistency with Policy Statement

Last, the Court must determine whether Mr. Horn's compassionate release would be consistent with the relevant policy statement. *See* U.S.S.G. § 1B1.13(3). The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court has done so with the detail contained in this order.

### III. CONCLUSION

For the foregoing reasons, Defendant Barry Horn's motion for compassionate release is **DENIED**.

DATED this 14th day of October, 2020.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge